GERTRUDE SVENSON *vs.* THE FIRST NATIONAL BANK OF BOSTON, trustee,[1] & others (and a companion case).

Norfolk.    January 12, 1977. — June 22, 1977.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Devise and Legacy,* To individuals or to class, Accrued and accumulated income of trust. *Trust,* Accrued and accumulated income, Trustee's compensation, Trustee's accounts. *Probate Court,* Accounts, Revocation of decree.

Where a provision in a will establishing a trust authorized the trustee "[t]o pay the income therefrom quarter annually to each of my servants, [naming them] . . . in equal amounts, during their lives, and upon the death of the last survivor, the principal and any accrued income shall be added to the residue of my estate," the testatrix intended that the gift of income to her four servants be a gift to those servants as a class, not as individuals, and therefore intended that as each servant died, the trustee should pay the portion of the trust income previously paid to that servant to the surviving servants rather than accumulate that income. [443-446]
Where a clause of a will establishing a trust provided that the trustee "may decide . . . whether [trust] expenses shall be charged to principal or income. All such decisions made by my trustee in good faith shall be conclusive upon all parties in interest," the trustee

---

[1] Throughout this opinion we shall refer to the Old Colony Trust Company and its successor corporation, The First National Bank of Boston, interchangeably and simply as "the bank."

had discretionary power, subject to review by the Probate Court, to charge the regular expenses of administering the trust either to principal or to income or to apportion those expenses between the two. [446]

A trust beneficiary who took no appeal from decrees of a Probate Court allowing certain accounts and who failed to file a petition in the Probate Court seeking the revocation of those decrees was not entitled to attack collaterally those decrees by means of a petition for a declaratory judgment, even though the petition was filed in the Probate Court. [446-449]

In an action to reopen previously allowed accounts, there was no showing of such fraud or manifest error as to justify the revocation of any of the decrees allowing the accounts. [450]

BILL IN EQUITY filed in the Probate Court for the county of Norfolk on January 24, 1974.

PETITIONS for the allowance of accounts, filed in the Probate Court for the county of Norfolk on March 13, 1970, March 30, 1971, February 28, 1972, and May 30, 1973.

The proceedings were heard by *Podolski*, C.J.

*Robert J. Brophy* for the plaintiff.

*Christopher T. Carlson* for The First National Bank of Boston, trustee.

BROWN, J. The plaintiff, Gertrude Svenson, filed in a Probate Court, pursuant to G. L. c. 231A, § 1, a petition seeking a declaration of her rights as a beneficiary of the trust created by clause fourteenth of the will of Agnes A. Logan (testatrix). The plaintiff also contested the petitions filed by the trustee under the will, the bank, for the allowance of its accounts numbered seventeen through twenty. The trial judge granted a motion to consolidate the two cases. He heard the cases on the pleadings, a stipulation of facts, and certain exhibits, and filed "Findings of Fact and Conclusions of Law." The plaintiff appeals from the "judgments" thereupon entered. See G. L. c. 215, § 9 (as amended through St. 1975, c. 400, § 57).

We summarize the pertinent facts. The plaintiff was one of four servants who were in the employ of the testatrix at the time of her death in 1933. In clause fourteenth of her will the testatrix established a trust in which she authorized the trustee "[t]o pay the income therefrom quarter

annually to each of my servants, Gertrude Svenson, Charlotte Olson, Selma Nylander and John P. Anderson (provided they are in my employ at the time of my death) in equal amounts, during their lives, and upon the death of the last survivor, the principal and any accrued income shall be added to the residue of my estate." The fifteenth clause of the will[2] established a residuary trust for the benefit of one Linus C. Coggan, the testatrix's lawyer, during his life (if he survived her, which he did); after his death either certain members of his family or such other persons as he might appoint were to take. In clause nineteenth of the will the testatrix "appointed" Coggan to be trustee of the various trusts established under the will (see *Wilson* v. *Stump,* 310 Mass. 614, 617 [1942]); he was duly qualified in the Probate Court. See 2 Newhall, Settlement of Estates § 407 (4th ed. 1958).

John P. Anderson died on June 13, 1945. In 1949 the plaintiff received from Coggan a letter requesting that she assent to his eleventh through fourteenth accounts. These accounts, which were enclosed with the letter, covered the period immediately before and after Anderson's death. The letter informed the plaintiff that Anderson had died, that the trust income to which Anderson had previously been entitled was being "accumulated, and [that] one-quarter of the income of the trust has been and will continue to be paid to you as usual." The plaintiff assented to the allowance of the accounts, and the Probate Court allowed them in May, 1950.

Coggan died in 1952, and the bank was thereupon appointed the sole trustee of the trust created by clause fourteenth of the testatrix's will.[3] Selma Nylander (then known as Selma Lawson) died on May 4, 1965, and Charlotte Olson died on May 15, 1971. The bank, like Coggan, has,

---

[2] This clause was erroneously labeled "Sixteenth." We shall refer to it as the fifteenth clause in order to avoid confusion as between it and the following clause which was properly labeled "Sixteenth."

[3] It appears that in September, 1950, Coggan resigned as trustee and that the Probate Court then appointed Coggan and the bank as joint trustees.

despite the deaths of the other three servants of the testatrix, consistently paid the plaintiff only one fourth of the net income of the trust created by clause fourteenth and has accumulated and held the one fourth shares of the deceased servants for the beneficiaries of the residuary trust. There is nothing in the record to suggest that either Coggan or the bank ever failed to give the plaintiff notice of the filing of their accounts or to send copies of those accounts to her in accordance with G. L. c. 206, § 24.

Clause sixteenth of the will provides in part that the trustee "may decide ... whether [trust] expenses shall be charged to principal or income. All such decisions made by my trustee in good faith shall be conclusive upon all parties in interest." Relying on this clause, the bank has regularly charged its trustee service fees entirely to trust income.[4]

The judge drew the following conclusions. Clause fourteenth of the will did not create a class gift with rights of survivorship among the beneficiaries but created four separate life estates, one for each of the four servants named. The accumulation by Coggan and the bank of the trust income to which the three deceased servants had previously been entitled was therefore proper, and the plaintiff has no right to share in any of that income. Clause sixteenth of the will gave the trustee discretion to decide whether trust expenses should be allocated to income or principal. Coggan and the bank acted in good faith in allocating such expenses entirely to income.

1. We address ourselves first to the arguments of the parties as to the correct interpretation of clauses fourteenth and sixteenth of the testatrix's will.

a. The plaintiff argues that the testatrix, contrary to the judge's conclusions of law, intended that the gift of income to her four servants contained in clause fourteenth be a gift to those servants as a class, not as individuals, and

---

[4] Both the plaintiff and the bank agree in their briefs that the bank during the period of its seventeenth through twentieth accounts charged no legal fees to trust income. It appears from the judge's findings that the bank occasionally charged legal fees to trust income prior to the bank's seventeenth account.

therefore intended that, as each servant died, the trustee should pay the portion of the trust income previously paid to that servant to the surviving servants rather than accumulate that income. We agree.'As a general rule, when there is a gift by will of the income from a testamentary trust to several named legatees in equal shares, the gift is to them as individuals rather than as a class even where, as here, the named legatees are described as a class. *Fitts* v. *Powell*, 307 Mass. 449, 453-454 (1940), and cases cited. *Sutherland* v. *Flaherty*, 1 Mass. App. Ct. 388, 389-390 (1973). But this rule must give way to the fundamental rule for construing wills "that the intention of the testator is to be ascertained from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution and, when so ascertained, that it be given effect unless some positive rule of law forbids." *Old Colony Trust Co.* v. *Treadwell*, 312 Mass. 214, 217 (1942). *Old Colony Trust Co.* v. *Stetson*, 326 Mass. 641, 644 (1951), and cases cited. *Sutherland* v. *Flaherty*, 1 Mass. App. Ct. at 390.

Had the testatrix intended that her four servants take as individuals rather than as a class, it would necessarily follow that she intended that, as each servant died, the trustee dispose of the income to which that servant was previously entitled in either of two ways: (1) that the trustee disburse that income to the deceased servant's legal representative until the death of the last surviving servant or (2) that the trustee hold and accumulate that income until the death of the last surviving servant, when the accumulated income together with the trust principal would pass to the residuary trust. See *Meserve* v. *Haak*, 191 Mass. 220, 221 (1906). But it is clear that the testatrix did not intend that the trustee dispose of the income previously paid to a deceased servant in either of these ways. The testatrix indicated her intent that this income not be disbursed to a deceased servant's legal representative by her direction that the trustee make payments to the servants only "during their lives." *Meserve* v. *Haak*, 191 Mass. at 222. If the testatrix had contemplated that upon the death of a ser-

vant the trustee should accumulate the portion of the trust income previously paid that servant and not disburse the entire trust income (not allocated to trust expenses) in the quarter annual disbursements clause fourteenth directs the trustee to make, it is reasonable to assume that the testatrix would have included in her will a provision authorizing the accumulation of income. The will contains no such provision. See *Meserve* v. *Haak,* 191 Mass. at 222, *Anderson* v. *Bean,* 220 Mass. 360, 361 (1915), and *Old Colony Trust Co.* v. *Treadwell,* 312 Mass. at 218. The reference to "accrued income" in clause fourteenth does not suggest such an authorization; it constitutes simply an effort by the testatrix to make clear her intent that no part of the trust income earned during the period between the last quarterly disbursement to the last surviving beneficiary and the death of that beneficiary pass to the legal representative of that beneficiary by the operation of G. L. c. 197, § 27, but that all such income go to the residuary trust. See *Loring* v. *Cotter,* 339 Mass. 689, 690-692 (1959). See also Griswold, Spendthrift Trusts § 352.2 (2d ed. 1947), 1 Newhall, Settlement of Estates § 85 (4th ed. 1958), and *In re McManus,* 282 N.Y. 420, 423-424 (1940).

We therefore conclude that the testatrix named the four servants, not to indicate her intent that servants take as individuals, but to provide greater certainty as to who was properly a member of the class entitled to receive income and thereby to eliminate the possibility that a servant hired after the execution of the will would take any share of the income. See *Old Colony Trust Co.* v. *Treadwell,* 312 Mass. at 217, and 4 Page, Wills § 35.4 (1961). Contrast *Boston Safe Deposit & Trust Co.* v. *Reed,* 229 Mass. 267, 271 (1918). The fact that clause fourteenth directs the trustee "[t]o pay the income" to the servants and does not direct that the income be divided among them lends support to our conclusion that the testatrix intended that the servants take as a class. *Old Colony Trust Co.* v. *Treadwell,* 312 Mass. at 217. Contrast *Boynton* v. *Boynton,* 266 Mass. 454, 460 (1929). A further indication that the testatrix considered the servants as a class is the fact that the testatrix

provided that the income payments terminate "upon the death of the last survivor." See *Meserve* v. *Haak,* 191 Mass. at 222.

b. It is clear to us that clause sixteenth of the testatrix's will confers upon the trustee discretionary power to charge the regular expenses of administering the trust either to principal or to income or to apportion those expenses between the two. See *Old Colony Trust Co.* v. *Townsend,* 324 Mass. 298, 300 (1949); G. L. c. 206, § 16; 3 Scott, Trusts § 233.5 (3d ed. 1967). The fact that clause sixteenth provided that "decisions made by [the] trustee in good faith shall be conclusive upon all parties in interest" does not mean that the discretionary power conferred by clause sixteenth is unrestricted or free from judicial scrutiny. We interpret this provision to mean that the trustee must "in instances of doubt... use its best informed judgment in good faith in the light of what the established rules suggest to the trustee is consistent therewith." *Old Colony Trust Co.* v. *Silliman,* 352 Mass. 6, 10 (1967). *Worcester County Natl. Bank* v. *King,* 359 Mass. 231, 233 (1971). He cannot exercise his discretionary power so as to shift beneficial interests in the trust. *Id.* And the Probate Court may control the trustee in the exercise of his discretion if he acts beyond the bounds of reasonable judgment, in unreasonable disregard of usual fiduciary principles, or in bad faith. *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 350-351 (1965). Restatement (Second) of Trusts, § 187, comment j (1957). 3 Scott, Trusts § 187 (3d ed. 1967).

2. We now proceed to consider, in light of our construction of the disputed portions of the will, the plaintiff's contentions (a) that Coggan's thirteenth through seventeenth accounts and the bank's first sixteen accounts should be reopened and (b) that the bank's seventeenth through twentieth accounts should be partially disallowed.

a. Before taking up the plaintiff's contentions as to the reopening of previously allowed accounts of Coggan and the bank, we must consider a procedural question. The plaintiff took no appeal from the decrees of the Probate Court allowing the accounts she now seeks to have re-

opened. She has filed no petition in the Probate Court seeking the revocation of those decrees. See *Old Colony Trust Co.* v. *Mabbett,* 334 Mass. 412, 416 (1956). She cannot, as she has attempted to do, collaterally attack those decrees by means of a petition for a declaratory judgment, even though that petition was filed in the Probate Court. *Wilbur* v. *Hallett,* 305 Mass. 554, 558 (1940). *Garafalo* v. *Boccadoro,* 362 Mass. 886 (1972). Decrees of the Probate Court allowing interim accounts of fiduciaries now have the same effect as other decrees of that court and are not subject to review in the final account of the fiduciary. *O'Brien* v. *Dwight,* 363 Mass. 256, 285 (1973).[5] However, since the question whether Coggan's thirteenth through seventeenth accounts and the bank's first sixteen accounts should be reopened has been litigated below and has been fully argued before us, we will express by way of dictum our opinion on the subject in order to avoid future litigation between the parties. *Harvard* v. *Maxant,* 360 Mass. 432, 437 (1971). *Fairbairn* v. *Planning Bd. of Barnstable, ante,* 171, 179-180 (1977).

General Laws c. 206, § 24, as amended through St. 1963, c. 356, provides, "After a final decree has been entered on any account hereunder it shall not be impeached except for fraud or manifest error." There has been neither such "fraud" nor such "manifest error" as to justify the revocation of any of the decrees allowing the accounts which the plaintiff seeks to have reopened.

The plaintiff seeks the reopening of Coggan's thirteenth through seventeenth accounts solely in order that the bank may be ordered to pay the plaintiff that portion of the im-

---

[5] Most States follow the practice adhered to in Massachusetts of holding that an unrevoked decree approving an intermediate or annual accounting is res judicata as to the questions presented, and such matters are not subject to review in the final accounting. Contrast *Estate of Genung,* 161 Cal. App. 2d 507, 511 (1958), *In re Gray Estate,* 9 Mich. App. 262, 272 (1967), and *Matter of Crawford,* 207 Misc. 145, 148-150 (N.Y. Sur. Ct. 1955), with *Hardy* v. *Hardy,* 217 Ark. 296, 302-303 (1950). See Bogert, Trusts and Trustees § 974, and cases cited in n.40 (2d ed. 1962); 3 Scott, Trusts § 220, and cases cited in n.1 (3d ed. 1967).

properly accumulated trust income which has resulted from Coggan's failure to disburse to her during the period covered by those accounts her share of the trust income previously paid to Anderson. Although Coggan and certain members of his family, as beneficiaries of the residuary trust, stood to benefit personally from Coggan's accumulation of trust income, it is plain that no fraud was exercised on the plaintiff which operated to deprive her of her day in court. Contrast *Reynolds* v. *Remick,* 333 Mass. 1, 10 (1955), with *Jose* v. *Lyman,* 316 Mass. 271, 280 (1944), and *O'Brien* v. *Dwight,* 363 Mass. at 287-289. Before the allowance of any of his accounts covering the period after Anderson died, Coggan informed the plaintiff by letter that Anderson had died and that the trust income previously paid to him was being accumulated; Coggan enclosed in this letter his accounts covering the period immediately after Anderson's death. There is nothing in the record to indicate that the plaintiff was unaware that Coggan and certain members of his family were beneficiaries of the residuary trust (*Lembo* v. *Casaly, ante,* 240, 244-245 [1977]) or that she did not receive notice of the hearings on each of the accounts of Coggan she seeks to have reopened. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 154 (1936). Contrast *Porotto* v. *Fiduciary Trust Co.* 321 Mass. 638, 642-643 (1947). It was the duty of the plaintiff "to study the account . . . and to make . . . objections at the hearing" in the Probate Court. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. at 154. *Burlingham* v. *Worcester,* 351 Mass. 198, 202 (1966). *National Academy of Sciences* v. *Cambridge Trust Co.* 370 Mass. 303, 310 (1976). We conclude that the plaintiff assented to Coggan's accumulation of the trust income to which Anderson was previously entitled with full knowledge of the facts. *Preble* v. *Greenleaf,* 180 Mass. 79, 80-82 (1901). *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. at 149-150, 154. *Reynolds* v. *Remick,* 333 Mass. at 10. *Burlingham* v. *Worcester,* 351 Mass. at 202. 3 Scott, Trusts § 216 (3d ed. 1967). See *Taylor* v. *Worcester County Natl. Bank,* 360 Mass. 687, 691 (1971). Contrast *Jose* v. *Lyman,* 316 Mass.

at 281-282, *O'Brien* v. *Dwight*, 363 Mass. at 283-284, 288, and *National Academy of Sciences* v. *Cambridge Trust Co.* 370 Mass. at 310. We also note that whatever conflict of interest arose from the fact that Coggan was both trustee and residuary beneficiary of the trust created by clause fourteenth was inherent in the terms of the will; "where the method selected by a testator for the accomplishment of the purpose and object of the trust cannot be adopted by a trustee without dealing with himself individually, it may be fairly assumed that such dealing was contemplated by the testator." *Boston Safe Deposit & Trust Co.* v. *Lewis*, 317 Mass. 137, 141 (1944), and material cited.

The fact that Coggan misconstrued clause fourteenth of the testatrix's will does not demonstrate "manifest error" in the allowance of his accounts. "The errors which it now seems existed in these accounts are such that they can be ascertained only by a most elaborate re-examination of both fact and law." *Porotto* v. *Fiduciary Trust Co.* 321 Mass. at 643. *Reynolds* v. *Remick*, 333 Mass. at 9 ("To justify revocation of decrees it is not enough to show that ... the issues were not rightly decided"). Contrast *Theberge* v. *Howe*, 314 Mass. 22, 24-25 (1943), and *Stevens* v. *Moossa*, 2 Mass. App. Ct. 886, 887 (1974). Nor does this case fall within any of the other exceptions to the general rule prohibiting the reopening of previously allowed accounts. See cases cited in *O'Brien* v. *Dwight*, 363 Mass. at 286-287.

It follows from what has already been said that we must also reject the plaintiff's contention that the bank's first sixteen accounts should be reopened in order that the bank may be ordered to pay to the plaintiff that portion of the improperly accumulated trust income which resulted from the bank's failure to disburse to her during the period covered by those accounts her share of the trust income to which Anderson, Nylander (Lawson), and Olson were entitled before their deaths. There is nothing in the record to suggest that the plaintiff was not given notice of the filing of the bank's accounts or was, for any other reason, deprived of an opportunity to contest those accounts.

The plaintiff also seeks to have the bank's third through sixteenth accounts reopened so that the bank may be ordered to apportion its trustee service fees (and "slight" legal fees) during the period covered by those accounts between principal and income and may be ordered to disburse to the plaintiff the resulting increase in her share of the trust income. The apparent contention of the plaintiff is that during the period covered by the accounts in question the bank did apportion between income and principal the expenses of the other three trusts under the testatrix's will and that the failure to treat the trust created by clause fourteenth similarly constituted fraud or manifest error. We cannot consider this argument. Nothing in the record before us indicates whether the bank did so apportion the expenses of the other three trusts. The plaintiff has not included the bank's accounts in its record appendix, and we see no occasion to send for any of the original papers in these cases. *Haddad* v. *Board of Appeals of Medford*, 4 Mass. App. Ct. 843 (1976), and cases cited.

In any event, there is nothing to indicate that the plaintiff did not have an opportunity to raise the issue of apportionment of trust expenses at the original hearings on the allowance of the bank's third through sixteenth accounts. The trustee's allocation of trustee service fees entirely to income followed the ordinary practice of allocating regular annual expenses entirely to income (*Trustees of Dartmouth College* v. *Quincy*, 331 Mass. 219, 227 [1954], and cases cited; Restatement [Second] of Trusts § 233, comment e [1957]; 3 Scott, Trusts § 233.2 [3d ed. 1967]), and the plaintiff concedes that the trustee service fees were reasonable.

b. We turn now to the disposition of the bank's seventeenth through twentieth accounts. It follows from our construction of clause fourteenth of the will in part 1 (a) of this opinion that the bank's seventeenth through twentieth accounts must be adjusted to provide for the payment to the plaintiff of that portion of the trust income formerly payable to the deceased servants which during the period covered by these accounts the bank accumulated but

should have paid to the plaintiff. No other adjustment in the bank's seventeenth through twentieth accounts is necessary. In light of the facts that the bank's trustee service fees were reasonable, that the bank's allocation of its trustee service fees entirely to trust income followed ordinary practice, and that the record contains no indication that the bank did apportion between income and principal its trustee service fees for the other three trusts created by the testatrix's will, we will not interfere with the judge's finding that the bank acted in good faith in allocating its trustee service fees entirely to trust income.

3. The judgment entered on the plaintiff's petition for declaratory relief is reversed. A new judgment is to be entered in conformity with part 1 of this opinion. That judgment shall be restricted to a declaration of the plaintiff's future rights under clauses fourteenth and sixteenth of the testatrix's will and, in accordance with part 2 (a) of this opinion, shall make no declaration as to the correctness of Coggan's thirteenth through seventeenth accounts and the bank's first sixteen accounts. The judgment entered on the bank's petitions for the allowance of its seventeenth through twentieth accounts is also reversed. A new judgment is to be entered on those petitions in conformity with part 2 (b) of this opinion.

*So ordered.*