MARTHA M. SULLIVAN & another[1] vs. MARTHA M. SULLIVAN,
executrix;[2] CORRINE M. AUSTIN & another,[3] interveners.

No. 87-1356.

Dukes County.    September 19, 1988. — October 27, 1988.

Present: PERRETTA, KAPLAN, & FINE, JJ.

*Devise and Legacy,* Extrinsic evidence affecting construction, Construction
against intestacy, Determination of class. *Will,* Construction, Extrinsic
evidence. *Evidence,* Extrinsic affecting writing.

In the residuary clause of a will executed prior to January 1, 1978, naming as
beneficiaries the three children of one of the testatrix's brothers, the
words "my nephews Marshall John McDonough, Junior, . . . David
Condon McDonough . . . and to my niece Martha McDonough Sullivan
. . . in equal shares, that is one-third to each" were ambiguous on their
face as to whether a gift to a class or a gift to three named individuals
was intended, so that, in interpreting the clause, a judge was required
to consider properly offered extrinsic evidence of the circumstances and
state of knowledge of the testatrix around the time she executed the will,
and the state of her feelings toward the claimants. [504-506]
In an action by the two surviving beneficiaries under the residuary clause of
a will, seeking a declaration that the devise to them and to their brother,
who predeceased the testatrix, was as a class and not as individuals, the
properly offered extrinsic evidence, uncontradicted and substantially
believed by the judge, required a finding that the testatrix intended to
make a gift to the three named beneficiaries, who were the children of
one of her brothers, as a class rather than as individuals. [506-507]

CIVIL ACTION commenced in the Dukes County Division of
the Probate and Family Court Department on December 17,
1984.

The case was heard by *John S. Macdougall, Jr.,* J.

*Peter L. Koff* for the plaintiffs.

[1] David Condon McDonough.
[2] Of the will of Kathleen Juliet McDonough.
[3] Helen M. Jones.

*John E. Boyle* for the interveners.

FINE, J. Kathleen Juliet McDonough, who died in 1984, executed a will in 1975 which she had prepared herself. In pertinent part, it provided as follows:

> "I give, devise and bequeath all of my property, real and personal, tangible and intangible, of every name, nature and description and wherever or howsoever located:
>
> First: To my sister HELEN MCDONOUGH COOPER of West Tisbury, Massachusetts.
>
> Second: Should my sister predecease me, I give, devise and bequeath all of my said property to my nephews MARSHALL JOHN MCDONOUGH, Junior, of Tisbury, Massachusetts and DAVID CONDON MCDONOUGH, of Manchester, Massachusetts, and to my niece MARTHA MCDONOUGH SULLIVAN, of said Tisbury, Massachusetts, in equal shares, that is one-third to each."

Marshall John McDonough, Jr., David Condon McDonough, and Martha McDonough Sullivan, the nephews and niece named in the will's second paragraph, were the children of the testatrix's brother Marshall. All three, according to evidence taken by the judge at trial, lived near the testatrix, visited with her often, and spent family occasions with her. Other than the second paragraph, the will contained no residuary clause. The will also contained no provision for the testatrix's two other nieces, Helen M. Jones and Corrine M. Austin, children of the testatrix's brother Percival. Percival and his daughters resided some distance away from the testatrix, and they saw the testatrix infrequently, if at all, due to a long-standing family feud. The testatrix was predeceased in 1979 by her nephew Marshall, Jr., and in 1981 by her sister Helen. Neither Marshall, Jr., nor Helen left any issue.[4] The testatrix made no will or codicil subsequent to the deaths of either her nephew or her sister.

---

[4] Because Marshall, Jr., did not leave issue, the antilapse statute, G. L. c. 191, § 22, is not called into play.

Martha and David, the surviving legatees under the second clause of the will, brought an action in the Probate Court against Martha, in her capacity as executrix, seeking a declaration that the devise to them was as a class. If their assertion is correct, they would share equally the proceeds of the estate; if not, the one-third share of Marshall, Jr., would have lapsed upon his death, and his share would pass by intestacy to the testatrix's heirs at law. Helen and Corrine, nieces of the testatrix, who claimed an interest in the estate as heirs at law, were permitted to intervene as defendants. The probate judge ruled that the will was not ambiguous and that it provided for the nephews and niece as individuals and not as members of a class. Thus, he concluded that Marshall, Jr.'s one-third share passed to the testatrix's heirs at law by intestacy.

The parties were at odds at trial as to whether the judge should consider extrinsic evidence in ruling on the meaning of the will. There is some confusion in the record about how the judge resolved that issue. He permitted witnesses to take the stand and testify on behalf of Martha and David as to extrinsic matters. Helen and Corrine offered no evidence and objected to the introduction of any extrinsic evidence. The judge put off until a later time a ruling upon the competence of the testimony of the witnesses for Martha and David. After trial, the judge made several findings based on the testimony, indicating, generally, that he accepted its content as substantially true. However, he also denied Martha's and David's motion in limine by means of which they had sought permission to introduce the extrinsic evidence, and he indicated in his conclusions of law his view that, where a will, such as the one in issue, is unambiguous, extrinsic evidence is inadmissible to aid in its interpretation. We conclude that the will is ambiguous, that the evidence is material and should have been considered, and that the force of the evidence is to require a result contrary to that ordered by the judge. We therefore reverse the decision of the Probate Court.

We first look to the provisions of the will to determine whether it was clear on its face whether a class gift or a gift to the named individuals was intended. On the one hand, the use

of the three names in the second clause and the reference there
to "equal shares, that is one-third to each" is suggestive of an
intention to make gifts to individuals. On the other hand, the
nephews and niece, all of the children of one of the testatrix's
brothers, form a natural class. Moreover, the second clause is
the residuary clause in the will, and there is no indication in
the will as a whole of an intent to benefit anyone other than
the named individuals. Also, it is fair to assume that the testa-
trix, having drawn a will, desired to avoid intestacy. From
these conflicting indications, we conclude that the will is not
clear on its face.

Applicable general rules for construing wills in existence at
the time the will was drawn[5] do not point decisively in one
direction or the other. In construing wills executed prior to
1978, "[i]t is the general rule that where there is a gift by will
of a fund or residue to several legatees who are named, to be
divided among them in equal shares, the gift is to them as
individuals, and this is true even though the named individuals
do in fact constitute a class and are described as a class." *Old
Colony Trust Co.* v. *Treadwell*, 312 Mass. 214, 217 (1942).
See *Svenson* v. *First Natl. Bank*, 5 Mass. App. Ct. 440, 444
(1977). On the other hand, "[i]t is well settled that a construc-
tion of a will resulting in intestacy is not to be adopted unless
plainly required; and it is to be presumed that when a will is
made the testator intended a disposition of all his property and
did not intend to leave an intestate estate." *South Shore Natl.
Bank* v. *Berman*, 1 Mass. App. Ct. 9, 11 (1972). See *Dorfman*
v. *Allen*, 386 Mass. 136, 140 (1982).[6]

If the meaning of the will had been clear on its face, the
judge could not have considered extrinsic evidence to vary its

---

[5] Wills executed on or after January 1, 1978, are governed by G. L.
c. 191, § 1A, par. 5. That section, as appearing in St. 1977, c. 637, § 1,
provides: "Where there is a residuary gift to two or more legatees or devisees
and the share of one or more of them totally fails for any reason, such share
or shares shall pass to the other residuary legatees or devisees proportion-
ately."

[6] It has been suggested that the fact that such a disposition appears in the
residuary clause should result in the gift being construed as a class gift.
See 5 American Law of Property § 22.6 (Casner ed. 1952).

effect. See *Putnam* v. *Putnam*, 366 Mass. 261, 266 (1974); *First Natl. Bank* v. *Shawmut Bank*, 378 Mass. 137, 144 (1979); *Gustafson* v. *Svenson*, 4 Mass. App. Ct. 338, 340 (1976). See generally Smith, The Admissibility of Extrinsic Evidence in Will Interpretation Cases, 64 Mass. L. Rev. 123, 124 (1979). As the will was not clear on its face, the judge was required to consider, at least, properly offered evidence of the circumstances known to the testatrix around the time she executed the will and the state of her feelings towards the claimants. See *Calder* v. *Bryant*, 282 Mass. 231, 235 (1933); *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 581-582 (1935); *Gray* v. *McCausland*, 314 Mass. 743, 747 (1943); *McKelvy* v. *Terry*, 370 Mass. 328, 334-335 (1976); *Clymer* v. *Mayo*, 393 Mass. 754, 769-770 (1985); *Phipps* v. *Barbera*, 23 Mass. App. Ct. 1, 3 (1986). To determine whether this gift is to a class or to individuals, the relevant inquiry is whether, "subjectively, the testator considered [the persons named as a class]." *Sutherland* v. *Flaherty*, 1 Mass. App. Ct. 388, 390 (1973). See *Fitts* v. *Powell*, 307 Mass. 449, 455 (1940). It is clear from the appellate decisions in several of the cases raising the issue whether a particular devise was to individuals or to a class that, whatever the final outcome, extrinsic evidence of the circumstances and state of knowledge of the testator and his feelings for the claimants was considered significant. See, for example, *Old Colony Trust Co.* v. *Treadwell*, 312 Mass. at 217; *Sutherland, supra* at 390-391.

The evidence in the instant case, uncontroverted and apparently substantially believed by the trial judge, was competent evidence of the testator's intent. It depicted, in some detail, a close, generous and loving relationship between the testatrix and the named niece and nephews and the absence of any relationship between the testatrix and Corrine and Helen due to both distance and estrangement. Also, there was evidence that the nephew, Marshall, Jr., who predeceased the testatrix, was forty-six years old and in good health at the time the will was drawn in 1975 and that the testatrix, therefore, had little reason to expect him to predecease her. We think the evidence required a finding that the testator intended to make a gift to

the nephews and niece named in the will's second paragraph as a class. It seems likely that the three individuals' names were used to accomplish that result because the words "nieces and nephews" would have been more inclusive than what was intended. See *Old Colony Trust Co.* v. *Treadwell*, 312 Mass. at 217; *Svenson* v. *First Natl. Bank*, 5 Mass. App. Ct. at 445. The words "in equal shares, that is one-third to each" may be seen merely as clarifying the intent of the testatrix that the devisees take equally rather than according to some other formula. Of course, had the testatrix employed a skilled draftsman to draw her will, one familiar, among other things, with the general rules of construction and the legal consequences which flow from a gift to individuals as distinguished from one to a class, better or additional words could have been used to express her intent. See *Frederick* v. *Frederick*, 355 Mass. 662, 663-664 (1969); *New England Merchants Natl. Bank* v. *Frost*, 357 Mass. 158, 163 (1970).

Judgment shall enter declaring that the testatrix intended to benefit Marshall, Jr., David, and Martha as a class.

*So ordered.*